IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| James A. Bryant, #315781 | ) | |
| | ) | Civil Action No. 5:11-1315-RBH-KDW |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden, Broad River Corr. Inst., | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

Petitioner, James A. Bryant ("Petitioner" or "Bryant"), a state prisoner, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and a motion for default judgment. This matter is before the court pursuant to 28 U.S.C. § Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's return and motion for summary judgment. ECF No. 26, 27. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 28. Petitioner filed a response in opposition to Respondent's motion. ECF No. 33. Respondent filed a Reply, ECF. No. 34, and Petitioner filed a Sur-Reply, ECF. No. 35. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment, ECF No. 27, be granted and Plaintiff's Motion for Default Judgment, ECF No. 19, be denied.

I.      Factual Background

On the night and early morning of February 10-11, 2006, estranged wife of Petitioner ("Mrs. Bryant"), and her boyfriend, ("Mr. Hayward") were in the upstairs bedroom of her

apartment, and she heard a loud crash. App. 82.[1]  She testified that Petitioner entered her bedroom carrying a stick that he used to beat her and Mr. Hayward on their heads and faces. App. 83. During the attack, Mrs. Bryant's young son entered the room and tried to reach for the stick. App. 41-42. As he reached for the stick, it hit his hand. App. 43.  Petitioner grabbed Mrs. Bryant by the hair, pulled her out of the bedroom and downstairs. App. 83.  While holding her by the hair, he demanded that she get her keys and pocketbook.  App. 85.  He then took her outside, threatened to kill her, took her to the side of the building and punched her to the ground. App. 86.  Petitioner then straddled Mrs. Bryant and began to choke her. *Id.*  The next thing Mrs. Bryant remembered was hearing her son asking for her. *Id.* She then ran into the house and called 911. *Id.*

Mrs. Bryant's neighbor testified to being awakened by loud noises in the early morning of February 11, 2006 through the shared wall of their apartments. App. 142.  She knew both Mrs. Bryant and the Petitioner through Mrs. Bryant's sister, App. 141, and testified that she heard Petitioner's voice, and also heard Mrs. Bryant's voice calling for help.  App. 143.  She also heard a hitting noise and called 911. App. 143-44.  She looked out her window and saw Petitioner dragging Mrs. Bryant by her hair to the side of the building. App. 145.

Dr. John Manning, emergency room physician at Georgetown Hospital, treated Mrs. Bryant, her son, and Mr. Hayward on the morning of February 11, 2006. App. 58-59.  Mr. Hayward had several facial fractures around his eye, his nose was broken, and he had other facial lacerations. App. 61.  He was given a CAT-Scan to make sure there was no brain injury, and Dr.

---

[1] Citations to "App." refer to the Appendix for Writ of Certiorari as to Petitioner's claim for collateral relief in the state courts of South Carolina. That appendix is available at ECF No. 26 in this habeas matter.

Manning sutured his wounds. App. 62-63. Mrs. Bryant had a broken nose, bodily pain from the altercation, and an injury to the top of her head. App. 64-65. Dr. Manning evaluated her for strangulation injury to her larynx, and her arm and leg were x-rayed to ensure she had no broken bones. App. 63, 66. Mrs. Bryant's son had a "boxer's fracture" to his hand. App. 67. His hand was placed in a splint until the swelling diminished so that it later could be placed in a cast. App. 67.

Investigator Johnell Sparkman of the Georgetown Police Department arrived at the apartment between 6:15 and 6:30 a.m. on the morning of February 11. App. 179-180. When he arrived, Sgt. Keith Smalls and Corporal Tim Burroughs were already present. App. 180. Investigator Sparkman took photographs of the apartment and collected other evidence. App. 182. Investigator Sparkman continued the investigation for several weeks. App. 197. After receiving an anonymous tip, he apprehended Petitioner on a Georgetown city street and arrested him. App. 196.

II. Procedural History

On May 30, 2006, Petitioner was tried before a jury in Georgetown County General Sessions Court on the following indictments: Burglary in the first degree (2006-GS-22-277); Kidnapping (2006-GS-22-278); Assault and Battery with Intent to Kill ("ABIK") (2006-GS-22-276, 2006-GS-22-279, and 2006-GS-22-303). . The Honorable Edward B. Cottingham presided. Petitioner was represented by Mr. J. Eric Fox, Esq. of the Public Defenders' Office. The jury returned a unanimous verdict finding Petitioner guilty of burglary, kidnapping, and ABIK for indictments 2006-GS-22-276 and 2006-GS-22-279. The jury found Petitioner not guilty of ABIK

for indictment 2006-GS-22-303, but guilty of assault and battery of a high and aggravated nature ("ABHAN"). App. 280. Judge Cottingham sentenced Petitioner to 28 years in prison. App. 288.

On June 2, 2006, Attorney Fox timely filed a Notice of Appeal. ECF No. 26-4. On March 5, 2008, Kathrine H. Hudgins, Esq., of the South Carolina Commission on Indigent Defense, filed the Final Brief of Appellant alleging the trial judge erred in "refusing to suppress the prejudicial prior bad act evidence" and "refusing to accept the guilty plea pursuant to North Carolina v. Alford."[2] ECF No. 26-5.

On January 14, 2009, the South Carolina Court of Appeals affirmed Petitioner's conviction, dismissing the allegations in his appeal that the trial judge erred in refusing to accept his guilty plea and in admitting evidence of prior bad acts. App. 292-93. The remittitur was issued on January 30, 2009. App. 294.

Petitioner filed his application for post-conviction relief ("PCR") on April 1, 2009. ECF No. 26-7. Petitioner alleged he was (a) denied the effective assistance of counsel during trial, (b) denied the right to present evidence of actual innocence, and (c) denied the right to exculpatory evidence. *Id.* On May 29, 2009, the State, represented by Christina J. Catoe, Esq., filed its Return and requested an evidentiary hearing on Petitioner's claims for relief. App. 350-53. Subsequently, on July 22, 2009, Petitioner filed an amended PCR application and a Motion to Address All Issues. App. 295-349. In his application, Petitioner alleged he was entitled to relief as a result of (1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel, (3) denial of due process of law, (4) the court's lack of subject matter jurisdiction, and (5) denial of right to present evidence of actual innocence and exculpatory evidence. App. 296.

---

[2] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

On July 28, 2009, the Honorable Larry B. Hyman, Jr. conducted an evidentiary hearing on Plaintiff's PCR application. App. 354-98. During the hearing, Petitioner and trial counsel, Attorney Fox, testified. App. 357-95. The court denied Petitioner's application, finding that he did not carry his burden and the main issues he claimed should have been addressed were "purely speculative." App. 397.

On August 25, 2009, the PCR court issued an order dismissing Petitioner's application for PCR. App. 399-409. Specifically, the PCR court issued the following findings of fact and conclusions of law:

> In considering the Applicant's case, this Court had before it the Applicant's PCR file, the records of the Georgetown County Clerk of Court regarding the convictions, the Applicant's records from the South Carolina Department of Corrections, the trial transcript, and the direct appeal records. Both the Applicant and his former trial attorney, Eric Fox, Esquire, testified at the hearing. This Court carefully listened to all of the testimony, and found the testimony of Mr. Fox to be credible on all issues. The Applicant's testimony was not credible.

> This Court finds that Mr. Fox's testimony refutes the Applicant's allegations. This Court finds that counsel conducted a reasonable investigation; that counsel adequately prepared for trial; and that counsel performed reasonably at trial. Counsel fully presented the Applicant's alibi defense to the jury, and he cross-examined the ex-wife and son regarding their motivations for lying about the Applicant being the perpetrator. Counsel also spoke with the victim, Nelson Hayward, and determined that he should not be called as a witness since he would testify that he had been unable to get a good look at his assailant. Although counsel did not have the wooden stick tested for fingerprints, and did not obtain Octavia Taylor's cell phone records, he did call Investigator Sparkman as a defense witness and used his testimony to show that the State failed to fully investigate the case and failed to investigate those things in particular.

> Further, this Court finds that even if counsel had rendered deficient performance for failing to obtain the cell phone records or failing to fingerprint the wooden stick, the Applicant failed to prove prejudice where he did not present the cell phone records or fingerprint results at the PCR hearing. Therefore, any prejudice is purely speculative - for all the Court knows, the cell phone records might have confirmed that the phone calls did occur; similarly, the wooden stick might be covered in the Applicant's fingerprints. See, e.g., Porter v. State, 368 S.C. 378,

5

386-87, 629 S.E.2d 353, 358 (2006); <u>Dempsey v. State</u>, 363 S.C. 365, 370, 610 S.E.2d 812, 815 (2005); <u>Bannister v. State</u>, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (mere speculation is insufficient to prove prejudice in a PCR case).

Regarding other specific allegations not addressed above: This Court finds that counsel had no reason to request a psychological evaluation of the Applicant, notwithstanding that the Applicant used alcohol on the night of the incident. This Court finds that counsel was not deficient in failing to object to Dr. Manning's qualifications, and was not deficient in failing to obtain an independent crime scene expert. Further, this Court finds that the Applicant failed to prove that counsel was ineffective for failing to object to the State's photographs. <u>See</u> <u>Porter</u>, <u>Dempsey</u>, and <u>Bannister</u>, <u>supra</u>. This Court further finds that counsel had no basis to object to alleged hearsay testimony of Octavia Taylor, since the testimony was that of the Applicant himself and was therefore a party admission under Rule 801 (d), SCRE. This Court also finds that counsel had no basis to object to the malice jury instruction since it was not erroneous or burden-shifting. (<u>See</u> Trial Transcript, p. 229; p. 275).

This Court further finds that a directed verdict was clearly not warranted in this case, and therefore, appellate counsel was not deficient for failing to raise this issue on appeal. (See Trial Transcript, pages 38-101). In addition, this Court finds the Applicant's allegations regarding fatal variances in the indictments, prosecutorial misconduct, and lack of subject matter jurisdiction to be without merit.

In conclusion, this Court finds that the Applicant failed to rebut the presumption that counsel's conduct fell within reasonable professional norms. Further, this Court finds no errors sufficient to undermine confidence in the outcome of the trial. Therefore, the Applicant failed to show any entitlement to post-conviction relief.

App. 402, 407-08.

Continuing, the PCR court concluded:

For all of the reasons discussed above, this Court finds and concludes that Mr. Bryant's post-conviction relief Application must be denied and dismissed with prejudice for failure to meet his burden of proof under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and <u>Butler v. State</u>, 286 S.C. 441, 334 S.E.2d 813 (1985).

Counsel's attention is directed to <u>Marlar v. State</u>, 375 S.C. 407, 653 S.E.2d 266 (2007), and Rule 59(e), SCRCP, regarding the filing of a Motion to Alter or Amend should counsel believe this Order fails to adequately address all issues raised as required by S.C. Code Ann. § 17-27-80 (2003).

This Court further advises that if Applicant desires to secure appellate review of this Order, a notice of appeal must be filed and served within thirty (30) days of the service of this Order. Applicant and counsel are directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of appeal has been timely filed.

IT IS THEREFORE ORDERED THAT:

1. The Application for post-conviction relief is DENIED and DISMISSED with PREJUDICE.
2. The Applicant must remain in the custody of the State for the completion of his sentence.

App. 408-09.

A notice of appeal was timely filed and served on August 27, 2009. ECF No. 26-9. On January 29, 2010, Petitioner, represented by Robert Pachak, Esq. of the South Carolina Commission on Indigent Defense, filed a petition for writ of certiorari arguing "Defense counsel was ineffective in failing to object to an incorrect malice charge." ECF No. 26-10. The State filed a Return to the petition for writ of certiorari on March 8, 2010, arguing that the "PCR judge properly denied post-conviction relief, where the jury charge regarding the inferred malice was proper, and where Petitioner suffered no prejudice from the charge in any event." ECF No. 26-11. On April 7, 2011, the Supreme Court of South Carolina denied the petition for certiorari. ECF No. 26-12. The remittitur issued on April 25, 2011. ECF No. 26-13. This habeas petition followed.

III.    Discussion

A.    Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus:[3]

Ground One:

The judge erred in refusing to suppress prejudicial prior bad act testimony about a confrontation between the appellant and his estranged wife.

Supporting Facts: Mrs. Bryant testified about a confrontation with [Petitioner] on February 10, 2006, the night before the incident. (R. p. 31, lines 18- p. 32 – p. 33 – p. 34, lines 1-14). Counsel objected to the testimony. (R. p. 31, lines 12-14). The judge allowed the testimony without any Lyle analysis. (R. p. 31, line 17). . . . The judge ruled that it was a continuing event and was in violation of a restraining order. (R. p. 70, lines 9-18). . . .The judge ruled that the testimony was appropriate for consideration by the jury. (R. p. 70, lines 25 – p. 71, lines 1-6). The judge erred in allowing the testimony.

***

The testimony about the confrontation the night before constitutes evidence of a prior bad act. Evidence of other crimes, wrongs, or acts is generally not admissible to prove the defendant's guilt for the crime charged. Such evidence may be admitted to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent. Rule 404(b), SCRE; State v. Lyle, 125 S.C. 406, 118 S.E. 803 (1923). The State failed to offer any justification for the admission of prior bad act testimony. The judge failed to conduct a Lyle analysis, stating that the prior confrontation and the assault the following evening constituted a continuing event. The judge erred. The assaults for which [Petitioner] was on trial and the confrontation the night before were two separate events. Testimony about the prior bad act should have been suppressed.

Even if prior bad act evidence is clear and convincing, an issue not raised by counsel or addressed by the judge, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. State v. Braxton, 343 S.C. 629, 541 S.E.2d 833 (2001). The danger of unfair prejudice is enhanced in this case because both the prior bad act and the act for which [Petitioner] went to trial involved a choking. Mrs. Bryant testified that during the prior incident [Petitioner] had a tight grip around her neck. (R. p. 34, lines 2-7). [Petitioner] was not charged in connection with the prior incident. One of the indictments for which [Petitioner] went to trial, the ABIK involving Mrs. Bryant, alleges a choking. At trial, Mrs. Bryant testified that [Petitioner] choked her. (R. p. 38, lines 13-16). When the prior bad act is similar to the one which the

_____

[3] Petitioner sets forth his four grounds in the form Petition, and refers to his Memorandum of Law in Support of Petition for the supporting facts. See ECF No. 1 at 5-11.

appellant was tried, the danger of prejudice is enhanced. <u>State v. Brooks</u>, 341 S.C. 57, 62-63, 533 S.E.2d 325, 328 (2000). The judge erred in refusing to suppress the prejudicial prior bad act evidence.

Pet'r's Mem. of Law in Supp. of Pet., ECF No. 1-1 at 3-5.[4]

Ground Two:

The judge erred in refusing to accept an <u>Alford</u> plea.

Supporting facts:  On the second day of trial and after the close of the State's case, [Petitioner] informed the judge he wanted to enter a guilty plea. (R. p. 78, lines 10-11). During the guilty plea colloquy, [Petitioner] told the judge that his lawyer failed to tell him that the State offered a plea bargain for 15 years. (R. p. 78, lines 24 – p. 208, lines 1-7). The judge advised [Petitioner] that after hearing the facts he would not accept a plea for 15 years. (R. p. 82, lines 24 – p. 83, lines 1-12). After being advised by the judge that he was not going to sentence [Petitioner] to the minimum 15 year sentence, [Petitioner] continued with his guilty plea. The judge advised [Petitioner] that he had to admit his guilt in order for the guilty plea to be accepted. (R. p. 89, lines 9-21). [Petitioner] told the judge, "Well, see. That's the part. I was so drunk up, I don't know if I did it or not." (R. p. 89, lines 23-24). The judge refused to accept the plea. (R. p. 89, lines 25 – p. 90, lines 1-3). The judge erred.

An express admission of guilt is not a constitutional requisite to the imposition of a criminal penalty and an individual accused of a crime may voluntarily, knowingly and intelligently consent to imposition of a prison sentence even if he is unwilling or unable to admit guilt. <u>North Carolina v. Alford</u>, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The record of the attempted guilty plea reflects that [Petitioner] wished to enter a guilty plea knowing he was facing more than 15 years in prison. The judge erred in refusing to accept the guilty plea pursuant to <u>North Carolina v. Alford</u>.

Pet'r's Mem. of Law in Supp. of Pet., ECF No. 1-1 at 5-6.

---

[4] The court notes that Petitioner's cites to the record in his brief (ECF No. 1-1) do not correlate to the trial transcript contained in the Appendix made part of the record herein. However, the court has reviewed the appropriate portions of the transcript in considering Petitioner's claims and cites to the pertinent pages of the Appendix as appropriate herein.

Ground Three:[5]

Ineffective assistance of counsel (trial and appeal counsels).

Supporting facts: <u>Issue A: Was Appellant Counsel ineffective for failing to argue the directed verdict issues on Appeal?</u> [Petitioner] was charged with three (3) Assault and Battery with intent to kill, indictment numbers: 06-GS-22-276; 279; 303 and Burglary First, indictment number: 06-GS-22-277, and Kidnapping, indictment number: 06-GS-22-278. [Petitioner] was found guilty on all charges except, indictment number: 06-GS-22-300 (ABWIK), whereas the Jury acquitted on the greater, but found him guilty of the lesser-included offense (Assault and Battery with a high and aggravated nature (ABHAN)).

The State presented their evidence and had rested. Then Defense Counsel motioned for a directed verdict as to all five (5) indictments because the State had [n]ot carried its burden of proof as to each and every element. The Trial Court explained that he believed that the [Petitioner] didn't have permission to enter the Apartment, that Lasha Bryant was restrained against her will and that the [Petitioner] used a stick as a deadly weapon; and there, the Judge denied the Motion on all indictments. (Tr. p. 174, ln. 7- Tr. p. 176, ln.1). The Defense renewed the Directed Verdict Motions and again, the Trial Court denied them. (Tr. p.200, ln.12- Tr. p. 201, ln.1). This was error for the following reasons.

The State called [Petitioner's] thirteen year old son, [ ] Bryant, to testify against his father. He stated that he was half awake in bed, a heard a crash, got up and saw his Dad beating his Momma and male friend Trey (Nelson Hayward). He further stated that he reached for the stick and hurt his right hand. Then he said the [Petitioner] grabbed his Mother by the hair and took her down stairs, but he didn't see them. (Tr. p.41, ln.4- Tr. p.44, ln.12). It is vitally important that [we] point out the fact that the State leads this witness many times throughout his entire testimony. (Tr. p.40, lns.4-6; Tr. p.41, lns.10-13; Tr. p.43, lns.12-24; Tr. p.44, lns.13-16; Tr. p.45, lns.9-11).

On Cross-examination, Defense Counsel elicited testimony from [ ] Bryant, that his father had accidentally hit his hand. He further disclosed that his father had previous <u>permission</u> to come and spend the night quite often. (Tr. p.48, ln.11- Tr. p.49, ln.1). [Son's] Mother, Mrs. Lasha Bryant, testified that she invited the [Petitioner] over many times over a period of a year for intimate relations. (Tr. p.76, ln.25- Tr. p.77, ln.17). Lasha also testified that she had started dating Nelson Hayward in January of 2006. (Tr. p.77, ln.25- Tr. p.78, ln.14). However, [son] had testified that he didn't even know whether or not Mr. Hayward had ever stayed at his Mother's apartment before the night or morning of the alleged attack. (Tr. p.49, ln.24- Tr. p.50, ln.10). Mrs. Bryant and her son, both testified that neither one seen the [Petitioner] enter the building or flee the area.

---

[5] Designated as "Issues A-I" in Petitioner's brief in support of Petition. *See* ECF No. 1-1, at 7-37.

Furthermore, they both knew that the [Petitioner] lived approximately two (2) miles away with his Mother. There were no other cars around. (Tr. p.114, lns.2-23).

[Petitioner's] boss, Mr. William (Bill) Grimes, testified that he had picked up [Petitioner] to go to work about the same time as the incident occurred. He picked him up at his Mother's house. (Tr. p.124, lns.11-25).

Dr. John Manning testified for the State to the condition and seriousness of the injuries of the victims; which was [not] severe afterall. None of the injuries were life-threatening or anywhere near such. All three (3) alleged victims were released without any surgery, stiches, casts or follow-up treatment. The alleged victims weren't severely injured by this alleged attacker. Mrs. Bryant most likely had been choked unconscious as she had testified to, as well. (Tr. p.69, ln.10- Tr. p.70, ln.24).

Defense counsel was correct for his grounds for a directed verdict, but only partially correct. When the State rested, it had failed to prove all essential elements of all the charged offenses beyond a reasonable doubt by credible evidence, and not probable evidence of suspicion, speculation or conjecture as produced by the bolstering of the evidence by the State. Trial Court committed [r]eversible error and Appellate Counsel was truly ineffective for not bringing this Issue on Direct Appeal, which was certainly meritorious and stronger than any Issue that Appellate Counsel briefed for on Appeal.

Issue B: Was Counsel ineffective for not arguing that the State's evidence at trial was in fatal variances with the allegations within the indictments? As previously argued in Issue (A), the facts at trial did not amount to proof of the alleged crimes. Even if the State's witnesses testimony was credible, it is still quite obvious that their factual (material) variance between the allegations within the indictment and the proof at trial, particularly with the Assault and Battery with Intent To Kill. The State's evidence produced by the alleged victim's, versus their minor injuries as testified by Dr. Manning proves Assault and Battery With A High and Aggravated Nature (ABHAN) at best. Furthermore, there was also testimony give that shows that the [Petitioner] has been Mrs. Bryant invited guest up until this incident and therefore, he would not have had to kick the door in, to get in. Further, there was no evidence of the [Petitioner] entering the dwelling, leaving the dwelling, or any comptent evidence of a Kidnapping. Nobody seen Mrs. Bryant being choked. Ms. Smith testified for the State that she seen the [Petitioner] with Mrs. Bryant outside the apartment. However, after examination of the following trial page lines it will show this Honorable Court that it would have been impossible to have seen the events as she had testified to. (Tr. p.143, ln.18, Tr. p.144, ln.9; Tr. p.147, lns.3-8; Tr. p.149, lns.15-20; but specifically, Tr. p.148, ln.12- Tr.p.149, ln.6). The evidence is at variance with the evidence here, and it was Counsel's duty to argue this to the Court, for he may have received a favorable ruling or at least perserved the issue for Appeal purposes.

Issue C: Was Defense Counsel ineffective in failing to obtain or at least requiring a psychological evaluation for Applicant before going to trial? It was alleged by the State

that the [Petitioner] had committed a Burglary, Assaulted and injured his ex-wife, her lover, and his son. The State further alleged that the [Petitioner] beat up his ex-wife, Mr. Nelson Hayward and his own thirteen (13) year old son. Then [Petitioner] dragged his ex-wife by her hair downstairs and outside of the apartment. Once outside [Petitioner] choked her until she (Mrs. Bryant) passed out. . . . These bizarre and heineous actions were testified to at trial, by the State witnesses.

Mr. William (Bill) Grimes testified at trial that [Petitioner] was intoxicated and unable to work and that he was wearing the same cloths that he wore to work the previous day. (Tr. p.125, lns. 4-13;Tr. p.128, lns.10-16). It was also [Petitioner's] position to be innocent and offered an Alibi defense.

If any of the States allegations were actually true and Defense Counsel's client would claim innocence and an alibi would mean either one thing or another; this being either his client ([Petitioner]) had to have a mental disorder or Counsel should have investigated the case more thoroughly, and adequately. Either way there were plenty of indications that there may have existed some kind of mental disorder which required  treatment or could have negated the charges or their could have been another and better defense than an Alibi defense that Counsel really never put forth the necessary investigation to cultivate a case upon. Counsel was ineffective for not [a]t least seeking to obtain an evaluation as another possible defense to these very serious charges against the [Petitioner].

Issue D: <u>Was Counsel ineffective for failing to object to the State's witness as a qualified expert?</u> The State presented Emergency Room Physician, Mr. John Manning to the Court for qualifying as an expert in "emergency medicine." Without objection, the Court qualified Mr. Manning as a "Treating Physician," but not what the State asked the Court for Mr. Manning to be qualified as, which was an expert in "Emergency Medicine." (Tr. p.59, lns.5-10). There are a difference between these two (2) positions. An expert in emergency medicine, details working with medicine and the equipment used in the emergency rooms; whereas a treating physician, details the [actual] treatment of patients (in or out) of emergency rooms. This brings about the questions as [w]hy Defense Counsel did not object to Mr. Manning as being an expert or at least, moved the Court to "Voir Dire" this crucical witness to at least see if he had been qualified in any other cases or testified under the supervision of an qualified expert as South Carolina Laws require.

Issue E: <u>Was Defense Counsel ineffective for not obtaining an independent crime scene and forensic expert?</u> Investigator Sparkman arrived at the crime scene and did a collection of pertinent evidence in this case and photographed the area. He also testified to lots of blood and a stick proported as the assault and battery weapon. (Tr. p.181-182). However, none of the items were tested to see if the perpetrator of these assaults were actually the [Petitioner].  There was no fingerprinting on the stick or on anything else. (Tr. p. 183, ln.20- Tr. p. 184, Ln.25; Tr. p.190, ln.8- Tr. p. 192, ln.2). He further stated that he had a chance to search the [Petitioner's] Mother's house, where he ([Petitioner]) stayed for any clues such as blood on cloths or shoes; but did not search. (Tr. p.185, ln.2-

Tr. p.187, ln.6). There were testimony about the [Petitioner] making very threatening telephone calls, but Investigator Sparkman never made any attempt to get any of the telephone records to corroborate any of this damaging testimony. (Tr. p.187, ln.7- Tr. p.188, ln.19). There was telephone calls to Alibi witness William (Bill) Grimes during that time that these threats were supposedly being made and yet, the Investigator Sparkman failed to obtain records from Mr. Grimes that could have been the turning point for the defense. (Tr. p.188, lns.15-24). Counsel was certainly aware of the evidence collected by the Police was not tested at all nor was the [Petitioner's] (Moter's) residence searched in regards to evidence and yet; allowed his client to proceed to trial with a Alibi defense that could have been corroborated so much and could have discredited all of the State's witnesses for an acquittal on these serious charges.

Issue F: Was Counsel ineffective for failing to object to the State's prejudicial use of prejudicial photos? During the testimony of the State's witness and alleged victim, Lasha Bryant, the Solicitor introduced thirty seven (37) prejudicial photographs of scenes with blood leading throughout Mrs. Bryant's Apartment, without an objection by Defense Counsel. (Tr. p.92- Tr. p.101, ln. 3). Dr. Manning testified that the alleged victim, Lasha Bryant, had only minor injuries. (Tr. p.69, ln.10- Tr. p.70, ln.24). He also testified that Lasha and none of the victims were seriously injured and were released without any other treatment. (Tr. p.71, ln.5-23).

Furthermore, there was already cumulative testimony that the alleged assailant or perpetrator of the beatings was with Mrs. Bryant from the upstairs throughout the apartment, downstairs and out the door. (Tr. p.43, ln.16- Tr. p. 44, ln.23; Tr. p.83- Tr. p.84; Tr. p.143- Tr. p.145). For the State to be allowed to use these thirty-seven pictures for the improper bolstering and mental suggestion to imflame the passions and biases of this was highly prejudicial.

During the testimony of Lasha Bryant, the Solicitors reference to the word blood or bloody occurred at [1]east, twenty-six (26) times, over nine (9) pages of transcript of basically the Jury seeing and hearing about blood. The State basically [pounded] this through the Juror's head while Defense Counsel just sit there allowing this to take place without objecting to least once to the prejudicial excessive use of these prejudicial photos. Counsel was indeed ineffective.

Issue G: Did Counsel fail to adequately investigate and prepare for trial and thereby committing ineffective assistance? [Petitioner] was accused of attacking Lasha Bryant, Nelson Hayward and [] Bryant around 6:00 a.m. on February 11, 2006. (Tr. p.88, ln.25-, Tr. p.89, ln.3; Tr. p. 82, ln.16- Tr. p.84). It was [Petitioner's] position throughout trial that he was with his boss, Mr. Grimes at 6:00 a.m.

Investigator Sparkman collected evidence for the State in this case. He also photographed the crime as well. (Tr. p.182-182). However, none of these items were tested at all. The State didn't even attempt to fingerprint the proported weapon of attack; the stick or

anything else. (Tr. p.183, ln.20- Tr. p.184, ln.25; Tr. p.190, ln.8- Tr. p.192, ln.2). The Police's investigator also had a chance to get a search warrant to search [Petitioner's] residence for any corroborating physical evidence of the attack to have happened the way the State's witnesses alleged it did, but he choose not to.

There was testimony from State's witness Octavia Taylor about the [Petitioner] making threatening phone calls during the time that [Petitioner] was with his boss as previously testified to by Mr. Grimes. (Tr. p.187, ln.7- Tr. p.188, ln.19; Tr. p.159, lns.7-23; Tr. p.166, lns.3-20). Some of these calls were used here by the Prosecutor as a confession to these crimes and not only did Officer Sparkman fail to get any of the phone records in regards to the many calls supposedly made by [Petitioner], Defense Counsel made absolutely [n]o effort to obtain the phone records from her or [Petitioner's] boss, Mr. William Grimes. Counsel never went on [Petitioner's] own behalf to his Grandmother's house, Miss Agnes, to get her phone records or to seek [Petitioner's] cloths and shoes to see if his client was telling the complete story or too add him in cross-examination of the State's witnesses. This investigation would have been very essential to the [Petitioner's] Alibi defense as well as, attacking the State's witnesses credibility about the events and incident's in which they testified to.

Counsel did not make the necessary or adequate investigation for anything near a complete defense, nor a Alibi defense that could have been easily proven with adequate investigation which did not happen in this case, which constituted ineffective assistance by Counsel.

Issue H: Was Counsel ineffective for not objecting or taking exception to the Trial Court's erroneous Malice Charge? The Trial Court did something a bit odd in this particular case. The Court gave two (2) separate charges to the Jury; before closing arguments and after. On both occasions the Judge gave his Malice charge in relation to the Assault and Battery with Intent to Kill charges. See: "Both Complete Malice Charges" (Tr. p.228- Tr. p.231 and again Tr. p.272, ln.13- Tr. p. 275, ln.15). As seen by these trial pages and lines it is quite obvious that the Court's Malice Instruction was unconstitutional, as well as burden shifting, as it allowed the Jury to find [Petitioner] guilty based on a degree of proof below that which is required by the Due Process Clause. U.S. Const. Amend. (14) Fourteen.

When reviewed as a whole, the Court's malice instruction allowed the Jury to presume from the defendant's intentional acts and from the use of a deadly weapon that he was guilty of the Assault and Battery w/intent to kill charges, when there was actually more evidence of Assault and Battery with a High and Aggravated Nature (ABHAN). See: High v. State, 300 S.C. 88, 386 S.E.2d 463 (1989), in reference.

Issue I: Was Counsel ineffective for not objecting to hearsay testimony? Octavia Taylor testified for the State to what was proported as several phone calls made by [Petitioner]. According to Ms. Taylor's less than reliable testimony, [Petitioner] made threats against

his ex-wife, Lasha Bryant and basically gave a confession to her over her cell phone. At least, this is what the State uses this purposely elicited hearsay to establish within the minds of the Jury. (Tr. p.155- Tr. p.170; with specific reference to Tr. p.163-164). Counsel allowed this [very] prejudicial hearsay testimony that lacked any indication of reliability and failed to meet any exception to the hearsay rule. Some of these so-called cell phone conversations with [Petitioner] supposedly happened during the time [Petitioner] was at work with his boss, Mr. Grimes. (Tr. p.159, lns.7-23; Tr. p.166, lns.3-20 and Tr. p.187, ln.7- Tr. p.188, ln.19). The State used these alleged statements as threats that was made against the victim and as a confession to the crimes without any Police Officer, Investigator, or Defense obtaining the phone records for the authentication or reliability in these circumstances. [Rule 901, SCRE]. If these statements were to be preported by the State as confessions, then Counsel was further ineffective for not requesting a hearing on their admissibility.

Pet'r's Mem. of Law in Supp. of Pet., ECF No. 1-1 at 7-9, 14-15, 17-18, 20, 23-24, 27-28, 30-31, 34, 37.

Ground Four:[6]

> Denial of Due Process by Prosecutorial misconduct.

> Supporting facts: There was so much incredible testimony produced by the State's witnesses in this case as argued within many of other arguments. . . .The State was incorrect for the use of hearsay by the testimony of Octavia Taylor and their improper use of many photos of blood and they pounded them in the minds of the Jury over and over again within ten (10) pages of transcript.

> Furthermore, the State's opening statements, as well as their final summations were purposely designed to bolster and prejudice the [Petitioner] by misrepresentation of facts and Law in regards to the facts, seeking sympathy for the victims and basically everything determined by our Courts that prosecutors should not do in their Opening and Closing arguments to the Jury. See, entire opening and closing by the State in regards.

Pet'r's Mem. of Law in Supp. of Pet., ECF No. 1-1 at 41-42.

> B.      Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is

---

[6] Designated as "Issue J" in Petitioner's brief in support of Petition. *See* ECF No. 1-1, at 40-45.

appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a

similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion

18

requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim

of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.       Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional

violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

3.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id*. Absent a showing of cause, the court is not required to consider actual

prejudice. *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

4.      Ineffective Assistance of Counsel Claims

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1985). Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.*

D.      Analysis

1.      Procedurally-Barred Grounds

Respondent contends that Petitioner's Grounds One and Two are procedurally barred to the extent Petitioner did not seek review from the South Carolina Supreme Court after the South Carolina Court of Appeals denied Petitioner relief on these claims. *See* Resp.'s Br. 20 (arguing Petitioner failed to exhaust available remedies as to issues on direct appeal because he did not file a petition for writ of certiorari with the South Carolina Supreme Court after the South Carolina Court of Appeals denied relief). The undersigned disagrees.

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, the undersigned finds that Petitioner's claim is not procedurally barred for failure to pursue review in the South Carolina Supreme Court. *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) ("Our State has identified the petition for discretionary review to this Court in criminal and post-

conviction cases as outside South Carolina's standard review process. . . . We reiterate the substance of the 1990 order, *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases* [471 S.E.2d 454 (S.C. 1990)], and hold it effectively places discretionary review by this Court outside of South Carolina's 'ordinary appellate procedure' pursuant to *O'Sullivan [v. Boerckel,* 526 U.S. 838 (1999)]."). Accordingly, the undersigned considers Grounds One and Two on the merits, below.

Respondent also argues that all but one of Petitioner's claims in Ground Three and Petitioner's Ground Four are procedurally barred. In Ground Three Petitioner argued ten issues related to ineffective assistance of counsel, and Ground Four alleges a due process violation based on prosecutorial misconduct. All of these issues were the subject of Petitioner's Amended PCR application, addressed in an evidentiary hearing, and ruled upon by the PCR court. Petitioner raised only one claim in his writ of certiorari in the PCR appeal. That issue, designated as "Issue H" in Ground Three, was an ineffective assistance of counsel claim for failure to object to the malice charge. To the extent Petitioner did not raise Ground Three (Issues A-G, and Issue I) and Ground Four in his PCR appeal, they were not fairly presented to the South Carolina appellate courts and are procedurally-barred from federal habeas review. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

In *Kornahrens v. Evatt*, the Fourth Circuit Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. 66 F.3d 1350 (4th Cir. 1995). The court noted that it is always tempting to discuss the merits as an

23

alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion that follows is dicta. *See Karsten v. Kaiser Found. Health Plan*, 36 F.3d 8, 11 (4th Cir. 1994). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations. Accordingly, the undersigned will not discuss the merits of the claims raised in Grounds One, Two, Three (Issue A-G, Issue I), and Four as these claims are procedurally barred.

Additionally, Petitioner has not shown sufficient cause and prejudice to excuse the default. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, these issues are procedurally barred from consideration by this court and should be dismissed. *See* 28 U.S.C. § 2254; *Murray v. Carrier*, 477 U.S. 478 (1986); *Wainwright v. Sykes*, 433 U.S. at 88–91; *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (noting that to satisfy the prejudice prong of *Strickland*, a petitioner must demonstrate there is a reasonable probability that, but for counsel's errors, the result would have been different); *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court.").

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the State's procedural rule. *Murray*, 477 U.S. at 488. Petitioner asserts that his attempts to file a pro

se supplemental brief in support of his petition for writ of certiorari demonstrate that he attempted to include all of his grounds for review. ECF No. 33 at 28, ECF No. 33-2. Citing to *Jones v. State*, 558 S.E.2d 517 (2002), *State v. Stuckey*, 508 S.E.2d 564 (1998), and *Foster v. State,* 379 S.E.2d 907 (1989), the South Carolina Supreme Court declined to take action on Petitioner's pro se motion because he was represented by counsel. ECF No. 33-2 at 7. The South Carolina Supreme Court has held that there is no right under the Sixth Amendment or the South Carolina Constitution to hybrid representation, and it will not accept substantive documents filed pro se by persons represented by counsel. *State v. Stuckey*, 508 S.E.2d at 564. Petitioner was instructed to raise any concerns with the Division of Appellate Defense. ECF No. 33-2 at 7. Because nothing impeded Petitioner's counsel from filing a brief with Petitioner's additional claims or an *Anders* or *Johnson* brief,[7] Petitioner cannot show cause for failure to comply with the procedural rule. *See State v. Stuckey*, 508 S.E.2d at 565; *Jones v. State*, 558 S.E.2d 517 (holding that it is the responsibility of counsel to "use professional judgment in reviewing the documents and submit the client's arguments only if relevant and only after they have been edited by counsel for review by the Court.").

In the alternative, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of

---

[7] *Anders v. California*, 386 U.S. 738 (1967) and *Johnson v. State*, 364 S.E.2d 201 (1988) require that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

Petitioner made no effort to hide his identity, and three witnesses identified Petitioner as the attacker—including his estranged wife and son. In an attempt to enter a guilty plea Petitioner stated to the court "I still don't know if I did it or not because I was so intoxicated but that's all I can say. If I did it, I'm sorry but I don't remember doing it." App. 286. In light of the foregoing, Petitioner cannot show actual innocence. Because Petitioner cannot establish actual innocence, the procedural bars apply to Ground Three (Issues A-G, I) and Ground Four. Therefore, it is recommended that Respondent's motion for summary judgment be granted as to these grounds.

2. Merits Review

a. Ground One: Did the judge err in refusing to suppress bad act testimony about a confrontation between the appellant and his estranged wife?

As set out fully above, Petitioner's first ground concerns the state court trial judge's failing to suppress "prior bad act" evidence concerning a confrontation between Petitioner and his estranged wife (also a victim). *See* Pet'r's Mem. of Law in Supp. of Pet., ECF No. 1-1 at 3-5. Specifically, Petitioner claims the judge erred by permitting his estranged wife to testify regarding events that took place on February 10, 2006, the night before the incident for which he was being tried. *Id.*

The trial transcript reflects that Petitioner's trial counsel objected to that evidence. *See* App. 30 (noting off-the-record discussion between trial judge and counsel when prosecutor was beginning to tell jury about events of February 10, 2006); App. 79 (Petitioner's counsel objecting

to estranged wife's testimony regarding events of February 10, 2006; trial judge's permitting testimony over objection). At the close of the State's case, Petitioner's counsel renewed his objection to the testimony's being admitted, arguing it was a prior bad act that did not fall into any exception. App. 176. The court considered the argument, but found it appropriate for the jury to consider that evidence. *Id.* The trial judge noted the incident took place the night before the crimes at issue, which made it part of one continuing event. *Id.* Further, the judge found Petitioner had interacted with his estranged wife on that date in violation of a restraining order. *Id.* Petitioner's counsel also argued the testimony should not be considered by the jury because it was highly prejudicial and any probative value was outweighed. *Id.* He requested a new trial on that basis. *Id.* The court again ruled that the testimony was admissible. App. 176-77.

Petitioner argues the trial judge erred because he did not conduct an appropriate analysis pursuant to the South Carolina case of *State v. Lyle*, 118 S.E. 803 (1923). He also cites to several other South Carolina cases in support of his argument. *See* ECF No. 1-1 at 4-5.

Petitioner's first ground, then, plainly hinges on the state court's interpretation of state evidence law. He does not assert any federal law or constitutional right is at issue. Accordingly, Ground One falls outside this court's jurisdiction on habeas review. *See Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998). The undersigned recommends Ground One be summarily dismissed. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)("Federal habeas corpus relief does not lie in errors of state law.").

b.       Ground Two – Did the judge err in refusing to accept an Alford plea?

In his second ground, Petitioner claims the state court erred by refusing to accept his guilty plea, which he offered pursuant to *North Carolina v. Alford*. Petitioner explains that he

informed the trial judge "on the second day of trial and after the close of the State's case" that he wanted to enter a guilty plea. ECF No. 1-1 at 3. He claims the trial judge erred in refusing to accept his guilty plea, arguing the trial judge erred by advising Petitioner he would be required to admit guilt in order for the plea to be accepted. *Id.* Although he offers little analysis, Petitioner cites *Alford* for the proposition that an "express admission of guilt is not a constitutional requisite to the imposition of a criminal penalty and an individual accused of a crime may voluntarily, knowingly and intelligently consent to imposition of a prison sentence even if he is unwilling or unable to admit guilt[]." *Id.*

The undersigned disagrees with Petitioner. The trial transcript reveals that Petitioner indicated he wished to enter a guilty plea after the evidence was closed and just before the trial judge was going to charge the jury. App. 205. The trial judge asked numerous questions of Petitioner, his counsel, and the prosecutor in considering whether to accept the potential guilty plea. App. 205-17. Petitioner has not established a violation of federal law or of the United States Constitution. As the *Alford* Court noted:

> Our holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court, *see Lynch v. Overholser*, 369 U.S. 705, 719 [1962] (by implication), although the States may by statute or otherwise confer such a right.

*Alford*, 400 U.S. at 40 n. 11 (parenthetical in original). In addition, South Carolina law provides that a defendant "has no constitutional right to plea bargain[,]" nor is a trial judge "required to accept a plea." *Reed v. Becka*, 511 S.E.2d 396, 401 (S.C. Ct. App. 1999) (internal citation omitted); *see also Santobello v. New York*, 404 U.S. 257, 262 (1971) (noting defendant has no

absolute right to have guilty plea accepted; court may reject plea in exercise of sound judicial discretion).

Petitioner's second ground is without merit. He had no constitutional right to have his guilty plea accepted pursuant to *Alford*. His claim rests on the interpretation of state law. Accordingly, the claim falls outside of the court's habeas jurisdiction and should be dismissed. *Wright*, 151 F.3d at 157.

> c. Ground Three, Issue H – Ineffective assistance of counsel regarding trial counsel's failure to object to erroneous malice charge.

Petitioner argues he received ineffective assistance because his counsel failed to object or seek exception to the court's jury instruction on malice. ECF No. 1-1 at 36. Specifically, Petitioner alleges that the jury instruction erroneously allowed the burden of proof to be shifted from the State to the Petitioner. *Id.* Petitioner raised this issue to the PCR court, which denied Petitioner's challenge to his counsel's effectiveness for failure to object to the malice charge because it "was not erroneous or burden-shifting." App. 408. Because Petitioner arguably exhausted his argument regarding the jury instruction, the undersigned considers it on its merits.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland*, 466 U.S. at 687, the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Petitioner has not proven error or prejudice as required by *Strickland*. The PCR court found trial counsel's testimony was credible and the Petitioner's testimony was not. App. 402. The court gives deference to these credibility findings by the state court. *Wilson v. Ozmint,* 352 F.3d 847, 858-59 (4th Cir. 2003). "[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008).

As explained by the Fourth Circuit, matters regarding admissibility or sufficiency of evidence and jury instructions in state trials are matters of state procedural and substantive law that do not involve federal constitutional issues. *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960). Only when "circumstances impugning fundamental fairness or infringing specific constitutional protections" exist, is a federal question presented in a federal habeas petition. *Id*.

As part of its malice charge the court instructed the jury as follows:

Malice may be inferred from conduct showing a total disregard for human life. Inferred malice may also arise when the deed is done with a deadly weapon. . . . If facts are proved beyond a reasonable doubt sufficient to raise an inference of malice to your satisfaction, this inference would be simply an evidentiary fact to be considered by you along with the other evidence in the case, and you may give it such weight that you decide it should receive.

App. 228-29.

Petitioner argued in his brief to the South Carolina Supreme Court that because the court did not advise the jury that it could accept or reject the inference, the jury charge could be seen as burden shifting in violation of due process of law. ECF No. 26-10 at 5. Citing to *Strickland*, Petitioner further alleges that "counsel's failure to object to the burden shifting malice charge constituted deficient performance under the Sixth Amendment to the United States Constitution. *Id.* The undersigned disagrees. The trial court clearly told the jury that they could give the malice inference whatever weight it decided it should receive. App, 229. Because the court's malice charge was proper, the failure of Petitioner's counsel to object to the charge of malice was, therefore, not objectively unreasonable under the circumstances. Accordingly, the undersigned finds that Petitioner has failed to establish deficiency under the first prong of *Strickland*. Furthermore, because the malice charge was proper, Petitioner also fails to prove any resulting prejudice under the second prong of *Strickland*. Having reviewed the record, and in light of the PCR court's credibility findings, the undersigned is of the opinion that Petitioner's allegations of ineffective assistance of counsel are invalid. Thus, this ground is without merit and should be dismissed.

### 3.  Motion for Default Judgment

Petitioner opposed the court's granting Respondent's motion for extension of time, ECF No. 14, and moved for entry of default judgment for failure to respond to the Petition in the allotted time, ECF. No. 19. Respondent opposed the motion for default judgment. ECF No. 21. The court finds that Respondent properly moved for and was granted extensions, and filed the Return by the court ordered deadline. *See* ECF Nos. 14, 15, 22, 23, 26. Default judgment is inappropriate.

IV.     Conclusion

For the foregoing reasons, the court recommends that Respondent's motion for summary judgment, ECF No. 27, be GRANTED and Petitioner's motion for default judgment, ECF No. 19, be DENIED.

IT IS SO RECOMMENDED.

Kaymani D. West

May 31, 2012                                          Kaymani D. West
Florence, South Carolina                             United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**